**In re BRENDLE'S STORES, INC., Debtor.**

**Application for Reimbursement for Expenses Incurred by Members of the Unsecured Creditors Committee.**

**Bankruptcy No. B–92–14520C–11W.**

United States Bankruptcy Court, M.D. North Carolina, Greensboro Division.

Feb. 3, 1994.

Paul Traub, Traub, Bonacquist and Fox, New York City.

John A. Northen, Northen, Blue, Rooks, Thibaut, Anderson and Woods, Chapel Hill, NC.

Michael D. West, Bankruptcy Administrator, Greensboro, NC.

## MEMORANDUM OPINION

JAMES B. WOLFE, Jr., Chief Judge.

This matter comes before the Court on the December 28, 1993, motion by the committee representing the unsecured creditors of Brendle's Stores, Inc., appointed pursuant to an Order by the Court. The committee seeks reimbursement of the out-of-pocket expenses incurred by its members in connection with attendance at official committee meetings. This Court finds that the official committee is entitled to reimbursement for reasonable and necessary expenses.

## FINDING OF FACTS

On November 22, 1992, Brendle's, the debtor-in-possession, filed a voluntary Petition under Chapter 11 of the Bankruptcy Code. Since filing bankruptcy, the debtor corporation has continued to operate its stores. On December 14, 1993, the debtor's plan for reorganization was confirmed. The issue before the Court is whether or not members of the unsecured creditors' committee may receive reimbursement for their expenses which include travel, hotels, and related costs. The committee was appointed by the Court[1].

The committee has requested reimbursement in the amount of eighty-five thousand three-hundred and ninety-six dollars and forty-nine cents ($85,396.49)[2]. On December 28, 1993, the debtors stated no objection to reimbursement and asserted that the committee contributed to the preservation of the estate. However, the Bankruptcy Administrator at the December 28, 1993 hearing, and, on previous occasions, contended that the Bankruptcy Code does not allow official committees reimbursement for expenses, and even if such statutory authority exists, the Bankruptcy Administrator questioned wheth-

er the committee's work actually preserved the estate.

The Court believes this committee has been helpful in effectuating a successful plan of reorganization. The plan of reorganization was confirmed approximately thirteen months after the petition for bankruptcy was filed, a short period of time for a case of this complexity. Today, Brendle's continues as an employer, taxpayer, customer of creditors, and provider of merchandise to the general public.

## ANALYSIS

■ The Bankruptcy Code provides that volunteer committee members may seek reimbursement for their expenses; nevertheless, no such benefit expressly inures to the official committee. The seeming inequity of allowing only unofficial committees to collect repayment, has prompted many courts to reimburse official committees for expenses. To date, no Fourth Circuit or Middle District of North Carolina case addresses this particular issue. Those courts which have opined on this issue are divided on whether to reimburse official committees for their expenses. A large number, albeit a minority, of courts have rejected official committees' applications for reimbursement. *See, e.g., In re Southern Commodity Corp.*, 96 B.R. 392 (Bankr.S.D.Fla.1989); *In re Mason's Nursing Ctr.*, 73 B.R. 360 (Bankr.S.D.Fla.1987). The majority of courts have allowed reimbursement. *See, e.g., In re Jennings*, 96 B.R. 500 (Bankr.E.D.Pa.1989); *In re Global Int'l Airways Corp.*, 45 B.R. 258 (Bankr. W.D.Mo.1984); *In re Toy and Sports Warehouse, Inc.*, 38 B.R. 646 (Bankr.S.D.N.Y. 1984). The Sixth Circuit in *In re George Worthington Co.*, 921 F.2d 626, 634 (6th Cir. 1990), is the only circuit court to consider this issue.[3] That court found that the Code

---

1. On December 7, 1992, upon the recommendation of the Bankruptcy Administrator, a Court Order appointing a committee of unsecured creditors was signed.

2. The committee sought $42,389.98 for expenses incurred through March 1993; $25,956.45 for expenses in April 1993 through June 1993; $17,050.06 for expenses in July 1993 through September 1993.

3. The Bankruptcy Administrator refers to *In the Matter of UNR Indus.*, 736 F.2d 1136 (7th Cir. 1984), as supporting the proposition that official committee members cannot recover expenses. The *UNR* court barred two members of the committee from recovering litigation expenses because the court viewed those members as not acting on behalf of the committee as a whole, as required by Section 330. Compensation for professionals hired by the committee is authorized

authorized reimbursement of official committees' expenses.

## A. Statutory Authority

This Court believes that 11 U.S.C. § 503(b) is the relevant provision for the case at bar. Many courts have reimbursed official committees for their expenses under section 503(b)(1)(A), which states:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

These courts have expanded the reading of Section 503 to encourage "cooperation and participation in the settlement process—an underlying design of the Code." *Jennings, supra,* at 503. *See, also, In re Evans Prod. Co.,* 62 B.R. 579, 583 (S.D.Fla.1986); *In re Kaiser Steel Corp.,* 74 B.R. 885, 889 (Bankr. D.Colo.1987).

Indeed, Section 503(b)(1)(A) ostensibly reimburses any party with actual and necessary expenses spent in order to preserve the estate. As the *Worthington* court points out, a number of the courts "presume that the statutory duties imposed on an official unsecured creditors' committee by section 1103 are essential to the 'preservation of the estate' within the meaning of 503(b)(1)(A) and authorize reimbursement on this basis." *Worthington,* 921 F.2d at 633 (quoting *Jennings,* 96 B.R. at 504). *See, also, In re National Enterprises, Inc.,* 140 B.R. 871 (Bankr.E.D.Va.1992); *Kaiser,* 74 B.R. at 889; *Global,* 45 B.R. at 261. Thus, these courts reimbursed administrative expenses which were deemed actual and necessary costs of preserving the estate.

Additionally, a number of cases conclude that section 503(b) is not "comprehensive or exclusive," and on such grounds allow reimbursement. *Worthington,* 921 F.2d at 633.

under Section 330(a)(1). The *UNR* court focused on Section 330 and refused to discuss Section

These courts have focused on the word "including" in section 503(b). Importantly, the word "including" in section 503(b) precedes what are to be classified as allowed administrative expenses. *Id.* Since the Code states in section 102(3) that "including" is not a word of limitation, it follows that "the omission from the list of a statutory committee's expenses does not mean that they cannot be allowed." *Id. See, also, In re White Motor Credit Corp.,* 50 · B.R. 885, 892 (Bankr. N.D.Ohio 1985); *In re Fireside Office Supply, Inc.,* 17 B.R. 43, 45 (Bankr.D.Minn.1981).

Despite the apparent equity achieved by enlarging the scope of section 503(b), other courts have construed section 503(b)(3)(D) as limiting those parties which can recover under section 503(b)(1)(A). *In re Haiti,* 46 B.R. 539, 541 (Bankr.S.D.Fla.1985); *In re Lyons,* 28 B.R. 600, 602 (Bankr.E.D.Ark. 1983). Section 503(b)(3)(D) provides that a bankruptcy court may allow as an administrative expense the actual, necessary expenses to the following:

a creditor, an indentured trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under Section 1102 of this title, in making a substantial contribution in a case under Chapter 9 or 11 of this title....

Unlike section 503(b)(1)(A), section 503(b)(3)(D) specifically includes those parties that are entitled to expense reimbursement, and official committees for unsecured creditors are not mentioned. The Bankruptcy Administrator argues that by employing accepted rules of statutory construction "[s]ection 503(b)(3)(D)'s express exclusion of official creditors' committees makes clear that Congress did not intend for official creditors' committees to be reimbursed for their expenses pursuant to § 503...." (Bankruptcy Administrator's brief at 5). Thus, only the actual and necessary expenses incurred by a creditor, indentured trustee, equity security holder, or unofficial committee, who substantially contributes to the estate, may apply for reimbursement.

503(b). *Id.* at 1139.

In contrast, other courts interpret section 503(b)(3)(D) as expanding rather than restricting those parties who may be reimbursed. For example, in *In re Global Int'l Airways Corp.*, the court held:

> There is nothing in Section 503(b)(3)(D) that compels the reading that it bars reimbursement to appointed committees. Rather this reading establishes a two tier test: one for official committees and another for volunteer committees in terms of qualifying for reimbursement. An official committee is reimbursed if it performs its statutory duties. A volunteer committee is reimbursed if it makes a substantial contribution.

45 B.R. at 261. Once a court has determined that paragraph (D) does not prohibit reimbursement under section 503(b), it follows that section 503(b)(1)(A) provides a mechanism for reimbursement if a committee fulfills its statutory duties. Those parties specifically referred to in section 503(b)(3)(D), however, would be reimbursed only if they met the elevated standard of making a substantial contribution. *Id.*

This Court agrees with the *Worthington* court that section 503(b)(3)(D) does not preclude official committees from recovering administrative expenses. That court cites *In re GHR Energy Corp.* as supporting the proposition that section 503(b)(3)(D) has no preclusive effect. In *GHR*, the court believed that the disputed phrase "other than a committee appointed under § 1102" was, in fact, "a long hand expression for a voluntary, unofficial committee." *Worthington*, 921 F.2d at 632 (quoting *In re GHR Energy Corp.*, 35 B.R. 539, 541 (Bankr.D.Mass.1983)).[4] Therefore, the *Worthington* court correctly posits that "the phrase at issue in § 503(b)(3)(D) was meant to include a class not otherwise formerly deemed to be entitled to reimbursement; in other words, the phrase was meant to define an unofficial committee rather than to exclude an official committee." *Id.*

## B. Legislative History

Since the statute neither explicitly denies nor provides for reimbursement for official creditor committee's expenses, the Court will examine the legislative history. Congress has had at least three opportunities to change the Code and to grant official committees the right to recover administrative expenses. The Sixth Circuit held that ". . . the repeated attempts to amend section 503(b) and the floor debate indicate that this omission was an oversight and is contrary to congressional intent." *Worthington*, 921 F.2d at 631.[5] The *Worthington* court cites a number of courts which propose that the legislative history evinces Congressional intent to continue reimbursing official committees as was expressly provided for prior to enacting the Code. *Id.* at 629. (citing *Jennings*, 96 B.R. at 504) (legislative history suggests that Congress did not intend to change to policy of reimbursement); *In re Aviation Technical Support, Inc.*, 72 B.R. 32, 34 (Bankr.W.D.Tx.1987) ("the [legislative] history is clear: such expenses were considered as allowable claims.").

This Court is not persuaded that the failed attempts to amend the Code indicate Congress' intention to reimburse official committees for their expenses. However, the Court partially follows the Sixth Circuit's reasoning, in that, although no provision specifically authorizes reimbursement, the fundamental purpose underlying the Code mandates that the official unsecured creditor's committee should be recompensed for their efforts. Indeed, *In re GHR Energy Corp.* put it best when it stated:

> [U]nder the scheme adopted by the Bankruptcy Reform Act of 1978, i.e., with the bankruptcy judge removed from active participation in the case and the preference for leaving the debtor in possession, a § 1102 committee has a more important role in terms of monitoring the debtor's business life and developing the terms of

---

4. *See* Judiciary, Senate Report No. 95—989. The notes suggest that the phrase "other than a committee appointed under § 1102" modifies the preceding phrase, "a committee representing creditors," rather than the word "creditor" at the beginning of the sentence. 921 F.2d at 632.

5. The *Worthington* court refers to the floor debate between Senator DeConcini and Senator Dole on October 5, 1986. Both men agreed that reimbursing official committee members for their expense was necessary to promote an effective bankruptcy administration.

the plan of reorganization. [The court does] not believe that it is sensible to conclude that Congress mandated a more critical role for official committees and at the same time chose to change the existing rule and bar members from obtaining reimbursement for the expenses incurred in performing their duties.

*Worthington,* 921 F.2d at 633 (quoting *GHR,* 35 B.R. at 543). It is difficult to envision that Congress intended that the Code deprive an important actor in the reorganization process the right to seek reimbursement for necessary expenses.

## C. Conclusion

In finding that the official committee for unsecured creditors should be reimbursed for their expenses, this Court relies on the fact that there is no specific mention of excluding official committees from reimbursement in the statute or the legislative history. Further, as *Worthington* points out, there appears "implied in the overall scheme" of the Code that the official committee should have the right to petition the court for expenses. 921 F.2d at 634. Lastly, and most importantly, it seems inconceivable that Congress, in light of the statute and the legislative history, intended to reimburse unofficial committees if they made a substantial contribution, and yet deny court appointed committees any repayment. *See Jennings,* 96 B.R. at 502. Until Congress states its intention to exclude official committees from seeking reimbursement for expenses, this Court will continue to review official committees' expense applications.

This Court holds that section 503(b)(1)(A) empowers the bankruptcy court to reimburse an official unsecured creditors' committee for expenses which are spent in furtherance of preserving the estate. A number of courts such as *In re Lyons,* 28 B.R. at 601, have chosen to reimburse official committee members within the parameters of section 503(b)(3)(D). *See In re Farm Bureau,* 32 B.R. 69, 71 (Bankr.E.D.Mich.1982). Interestingly, these courts reasoned that while paragraph (D) prohibits reimbursement to official unsecured creditor committees, the Code does permit reimbursement for individual "creditors" serving on the committee, if those individuals have made a "substantial contribution" and the expenses were actual and necessary. This Court does not believe that paragraph (D) precludes reimbursement and accordingly rejects such an interpretation. Additionally, although such a reading may seem appealing, it requires a great deal of statutory gymnastics to reach the desired result. *Cf. In re Major Dynamics, Inc.,* 16 B.R. 279, 280 (Bankr.S.D.Cal.1981) ("It would indeed be anomalous to allow individuals on a committee to recover costs out of the estate when the Code does not provide such reimbursement to the creditors' committee itself.") Section 503(b)(1)(A) is the simplest and most logical source of statutory authority which enables the official committee to seek reimbursement.

■ After reviewing the files, this Court concludes that the official committee for Brendle's Stores, Inc. should be reimbursed in the amount of forty-five thousand dollars and no cents ($45,000.00), an amount which this Court finds represents the necessary costs incurred in preserving the estate thus far.

An Order consistent with this Opinion will be entered contemporaneously herewith.